# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

JOHN DEVANEY,                :
          Plaintiff,         :
      v.               :     C.A. No. 13-510L
                       :
PETER F. KILMARTIN, Attorney   :
General of the State of RI, et al.,   :
          Defendants.     :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

> Keeping time, time, time,
> In a sort of Runic rhyme,
> To the tintinnabulation that so musically wells
> From the bells, bells, bells, bells
> Bells, bells, bells.
> <u>The Bells</u>, Edgar Allen Poe (1848)

*Pro se* Plaintiff John Devaney believes that the excessive clapping, gonging, tolling pealing, ringing and chiming of the bells of two neighboring churches – St. Thomas More Catholic Church ("St. Thomas Church") and St. Peter's by-the-Sea Episcopal Church ("St. Peter's Church") (collectively "the Churches") – have profoundly disturbed his right to quiet enjoyment of his home, effectively forcing on him a call to worship that he does not want to hear.  In his third essay to battle these bells, he has recast his complaint, now challenging their tintinnabulation based both on the First, Fifth and Fourteenth Amendments of the United States Constitution and on the Rhode Island common law of nuisance.  He has named and joined as defendants[1] the Churches, the Roman Catholic Bishop of Providence based on his alleged supervisory authority over St. Thomas Church, and the Town of Narragansett based on its Noise

---

[1] Mr. Devaney also named Peter F. Kilmartin, Attorney General of the State of Rhode Island.  Because the Second Amended Complaint is devoid of substantive factual allegations against the Attorney General, naming him only because R.I. Gen. Laws § 9-30-11 requires a plaintiff who challenges the constitutionality of a local ordinance to give him notice, I recommended that all claims against him be dismissed with prejudice and Senior Judge Lagueux accepted my recommendation.  ECF Nos. 35, 51.  The Attorney General is no longer a party in this case.

Ordinance, which is at the vertex of this case. All four Defendants have challenged the viability of this Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Mr. Devaney has failed to state a federal claim arising under the Constitution, but rather has only state law claims against St. Thomas Church and St. Peter's Church, which should be resolved in the state court. Their motions have been referred to me for report and recommendation.

Because Mr. Devaney is *pro se*, this Court must review his pleading with liberality but not with complete disregard for the procedural and substantive protections that the law affords to these Defendants. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Kenda Corp. v. Pot O'Gold Money Leagues, 329 F.3d 216, 225 n.7 (1st Cir. 2003). Viewed through this lens, I find that the constitutional claims in the Second Amended Complaint remain deeply flawed and recommend that this Court dismiss them. I also recommend that the state law nuisance claims against the Town and all claims against the Roman Catholic Bishop of Providence be dismissed for failure to state a claim. Finally, I recommend that this Court exercise its discretion to decline to exercise jurisdiction over the remaining state law claims and that they be dismissed without prejudice.

The reasons for these recommendations follow.

# I.    FACTUAL[2] AND PROCEDURAL BACKGROUND

## a.    Mr. Devaney's Claims

In July 1995, Mr. Devaney, his wife and four children moved into an older home in the bucolic seaside Town of Narragansett, Rhode Island, located three blocks from the shores of

---

[2] These facts are derived from Mr. Devaney's Second Amended Complaint. Because these motions arise under Fed. R. Civ. P. 12(b)(6), I take as true all well-pleaded factual allegations and afford Mr. Devaney the benefit of all reasonable inferences. Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013). Because Mr. Devaney has purported to incorporate by reference all of the factual allegations in his earlier Amended Complaint, I reach back to the earlier pleading and also take as true all of its well-pleaded factual allegations. ECF No. 33 ¶ 13. In so doing, I do not condone Mr. Devaney's failure to comply with Fed. R. Civ. P. 10(c), which requires a pleader adopting by reference to identify the specific statements adopted. If this Court does not adopt my recommendation of dismissal, this Court should direct Mr. Devaney to amend again to cure this deficiency.

Narragansett Bay; because of the cooling effect of the Bay breezes, the home has never been air-conditioned. ECF No. 5 at 2, 5. When the Devaney family moved into their Narragansett home, across the street stood St. Thomas Church and to the rear was St. Peter's Church; both Churches had bell towers housing at least one bell. ECF No. 33 ¶ 11; ECF No. 5 at 1. However, at that time, the bell in St. Thomas's belfry was inoperable and silent while St. Peter's bell was unamplified, producing a "quaint" euphonious sound that Mr. Devaney described at the hearing as "a beautiful sound . . . inviting." ECF No. 5 at 2-3.

In approximately 2000 or 2001, St. Thomas repaired and upgraded its bell, adding electronic amplification, a motor, a timer and a clapper. ECF No. 5 at 2. At an unspecified point, St. Peter's also added electronic amplification. ECF No. 5 at 3. Since then, the bells of St. Thomas chime four times on Saturday and Sunday, three times on Monday through Friday, in addition to marking weddings, funerals and other special occasions; at 6 p.m. daily, the bells of St. Thomas ring out a call to pray "the Christian prayer and devotion, the 'Angelus.'" ECF No. 5 at 2. Meanwhile, the bells of St. Peter's mark the hours during daylight. ECF No. 5 at 2-3. Mr. Devaney has measured the intensity level of the chiming, gonging, clapping, pealing and pounding of these bells and alleges that it has approached 100 decibels.[3] ECF No. 5 at 2.

The impact of this accumulation of sound on Mr. Devaney has been catastrophic: despite no air-conditioning, he is forced to keep the storm windows closed and to wear earplugs, his marriage has collapsed and he has been alienated from his children. Fearful of the impact of the amplified sound, he refrains from inviting his infant grandchildren to his home. ECF No. 5 at 2. Further, as someone who professes no religion, Mr. Devaney alleges that he is deeply troubled

---

[3] Mr. Devaney does not specify from where he made his measurements or which set of bells was measured. The Narragansett Noise Ordinance requires that such a measurement should be done from the nearest property line of the affected property. Narragansett, R.I., Code of Ordinances ch. 22, art. III, § 22-46(a). For comparison, the Noise Ordinance defines a "noise disturbance" as a sound exceeding, at most (depending on the time of day and the location in the Town) 75 decibels. Id. § 22-47(a).

by being forced to hear a call to worship in which he is not interested; he perceives that the amplified bells are forcing him to listen to proselytizing from which he cannot escape even in the privacy of his home.[4]  To paraphrase the poet, far from "a piece of the continent, [a] part of the main," these bells have paradoxically isolated Mr. Devaney from family and friends, making him "an island, [e]ntire of itself."[5]

### b.    Narragansett's Noise Ordinance

Since at least 1986, the Town of Narragansett has had a Noise Ordinance.  Narragansett, R. I., Code of Ordinances ch. 22, art. III (1986) ("Noise Ordinance").  The Town's power to adopt such an ordinance derives from R.I. Const. art. XIII, § 2, which authorizes Rhode Island's cities and towns to adopt home rule charters.  Pursuant to Section 2-1-7 of the Narragansett Town Charter, the Narragansett Town Council may enact and amend ordinances for the preservation of the public peace, health, safety, and welfare of the inhabitants of the Town and for the protection of persons and property not inconsistent with the Rhode Island Constitution and laws enacted by the General Assembly in conformity with the powers reserved to the General Assembly.  Pursuant to Section 2-1-9 of the Charter, a proposed ordinance is introduced at a public Council meeting but may not be passed until after it has been publicized and presented at a second meeting; a petition from twenty or more electors requires a public hearing. The power of Rhode Island's communities to regulate excessive sound has been confirmed by

---

[4] At the hearing, Mr. Devaney eloquently added this allegation – it is entirely missing from his Second Amended Complaint.  In the interests of efficiency, I accept it as true for purposes of this motion.

[5]          No man is an island,
             Entire of itself,
             Every man is a piece of the continent,
             A part of the main.
                * * *
             And therefore never send to know for whom the bell tolls;
             It tolls for thee.
                     John Donne (1572-1631).

4

the Rhode Island Supreme Court.  State ex rel. Providence v. Auger, 44 A.3d 1218, 1231 (R.I.

2012) (noise in residential areas can be the subject of local regulation because it is "related

directly to preserving the public peace, safety, comfort and welfare").  The Noise Ordinance

carries the presumption that it was properly adopted with notice and an opportunity for a hearing

made available to all residents of the Town, including Mr. Devaney.[6]  Id. at 1226 (ordinance

carries presumption that enactment was constitutional); Laverty v. Roberts, 414 A.2d 461, 462

(R.I. 1980) (official acts of town council carry presumption of validity).

      The Noise Ordinance begins with findings by the Town Council regarding the competing

public policy considerations that it was balancing.  On one hand, the Council found that

"[e]xcessive noise is a serious hazard to the public health, safety and welfare and the quality of

life in a close urban society" and that "[e]ach person has a right to an environment reasonably

free from noise which jeopardizes health or welfare or unnecessarily degrades the quality of

life."  Noise Ordinance § 22-41(1), (4).  On the other, the Council also found that "[c]ertain of

the noise producing equipment in this community is essential to the quality of life and should be

allowed to continue at reasonable levels with responsible regulation."  Id. § 22-41(3).  The

Ordinance declares it to be the policy of the Town to promote an environment free from

excessive noise, "without unduly prohibiting, limiting or otherwise regulating the function of

certain noise producing equipment which is not amenable to such controls and yet is essential to

the quality of life in the community."  Id. § 22-41(5).

---

[6] During the years that Mr. Devaney has lived in Narragansett, the Noise Ordinance has twice been amended, in
2004 and again in 2011.  Ch. 849, § 1, 7-7-2004; Ch. 946, § 1, 8-15-2011.  The 2004 amendment added the bell-
tower performance exemption.  The 2011 amendment relaxed some of the sound constraints in the Ordinance,
raising the permitted decibel levels and increasing the times when more sound is permitted.  Ch. 946, § 1, 8-15-2011
(amending § 22-47(a)).

The Noise Ordinance squarely places bells in the category of "noise producing equipment which is not amenable to such controls and yet is essential to the quality of life in the community" by carving out two different exemptions that expressly include them. A nuanced analysis of the Noise Ordinance is necessary to an understanding of how each exemption operates in the context of the whole. In re Brown, 903 A.2d 147, 149 (R.I. 2006) (when performing statutory interpretation, court "consider[s] the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections").

In Section 22-46, the Noise Ordinance establishes a prohibition on any "noise disturbance." A noise disturbance is defined[7] as a noise that exceeds specific maximum noise levels laid out in Section 22-47 (depending on time of day, 55 or 65 decibels in residential zones and 55 or 75 decibels in business zones). Noise Ordinance § 22-46(a). The first bell exemption is one of four listed in Section 22-47(d): Section 22-54(a) exempts "[s]tationary nonemergency signaling devices," which include "any stationary bell, chime, siren, whistle or similar device." This exemption relieves all stationary bells and chimes from the burden of the maximum sound levels in Section 22-47 as long as the signal is limited to no more than one minute of sounding in an hour. Noise Ordinance § 22-54(a). Section 22-54(b) further exempts from the one-minute-per-hour limit "[d]evices used in conjunction with places of religious worship." This exemption was in place as of 1986, and has persisted without change to the present. The second bell exemption carves out "performances by the ringing of bells in a tower." Noise Ordinance § 22-50. The exemption also applies to performances by bands and orchestras. Id. This exemption was added by the 2004 amendment.

---

[7] In the alternative, a noise disturbance is a noise that exceeds ambient levels by five decibels. The alternative definition is applicable only when no maximum noise level applies. Noise Ordinance § 22-46(a).

Read holistically, the Narragansett Noise Ordinance reflects the special place that the sound of bells occupies in the "quality of life of [its] community."  Noise Ordinance § 22-41(5). Further, the Town's largely secular bell exemptions reflect the role that they have played in the history of New England, which resonates with their sounds.  <u>See generally</u> Richard Cullen Rath, <u>How Early America Sounded</u> 50 (2003); Deborah Lubken, <u>Joyful Ringing, Solemn Tolling: Methods and Meanings of Early American Tower Bells</u>, 69 Wm. & Mary Q. 823 (2012). Currently, in Rhode Island, 38% of the cities and towns that have noise ordinances exempt bells in general, church bells in particular, or specifically bells used in religious worship.[8]

---

[8] Bristol, R.I., Code § 10-42 ("nothing contained in this section shall prohibit performances by the ringing of bells in a tower"); Burrillville, R.I., Code § 16-42 ("nothing contained in this section shall prohibit performances by the ringing of bells in a tower"); Coventry, R.I., Code § 169-11 (permit generally required for sound equipment, but not required for "[c[hurch or clock carillons, bells or chimes"), Coventry, R.I., Code § 169-14 ("Devices used in conjunction with places of religious worship shall be exempt" from "[n]o person shall operate . . . any stationary bell . . . for more than one minute in an hourly period"); Cranston, R.I., Code § 8.20.010 ("maximum permissible sound pressure levels . . . shall not apply to . . . [a]ny bell or chime from any building clock, school or church"); Middletown, R.I., Code § 130.87 ("Devices used in conjunction with places of religious worship shall be exempt" from "no person shall operate . . . any stationary bell . . . intended primarily for non-emergency purposes . . . for more than one minute in any hour"); New Shoreham, R.I., Code § 12-53(b) ("Devices used in conjunction with places of religious worship shall be exempt" from "no person shall operate . . . any stationary bell . . . intended primarily for non-emergency purposes . . . for more than one minute in any hourly period"); Newport, R.I., Code § 8.12.150 ("Devices used in conjunction with on-going religious services shall be exempt" from "[n]o person shall operate . . . any stationary bell . . . for more than one minute in any one hour"); Newport, R.I., Code § 9.04.080 ("nothing herein shall be construed to prevent the tolling, at a moderate rate, of any such bells for lectures or any other lawful meeting"); North Kingstown, R.I., Code § 8-94 ("Devices used in conjunction with places of religious worship shall be exempt" from "no person shall operate . . . any stationary bell . . . intended primarily for non-emergency purposes . . . for more than one minute in any hourly period"); North Smithfield, R.I., Code § 8-121 ("nothing contained in this section shall prohibit performances by the ringing of bells in a tower"); Portsmouth, R.I., Code § 257-14 ("Devices used in conjunction with places of religious worship shall be exempt" from "[n]o person shall operate . . . any stationary bell . . . for more than one minute in any one hour"); Richmond, R.I., Code § 8.14.050 ("The following sounds shall be permitted . . . [s]ound generated by stationary non-emergency signaling devices includes bells . . . for less than one minute in each hour . . . [and] [s]ound generated by bells or other devices used at places of religious worship"); Smithfield, R.I., Code § 252-9 ("The provisions of this chapter shall not apply to . . . [s]ound produced by church bells or church chimes when used as part of religious observances or services"); Tiverton, R.I., Code § 38-145 ("Devices used in conjunction with places of religious worship shall be exempt" from "[n]o person shall operate . . . any stationary bell . . . for more than one minute in any one hour"); Warren, R.I., Code § 13.30 ("Devices used in conjunction with places of religious worship shall be exempt" from "[n]o person shall operate . . . any stationary bell . . . for more than one (1) minute in any hour"); Westerly, R.I., Code § 171-5 ("The emission of sound from church or clock carillons, bells or chimes is permitted at any time").

### c. Mr. Devaney's Pre-Litigation Efforts to Obtain Relief

After ten years of misery, Mr. Devaney took his fustigation about the braying of the bells to the Town as permitted by the Noise Ordinance. Noise Ordinance § 22-46(b) ("Any person . . . may be a complainant for the purposes of instituting action for any violation of this chapter."). In response, by letter dated August 26, 2010, the Town solicitor advised him that "the exemption contained within Section 22-54(b) [applicable only to bells used by places of worship] would control and, therefore, the noise from the church bell tower is exempt." ECF No. 33 ¶ 14. The letter did not reference either the secular exemption for performances by bells in a tower in Section 22-50 or the secular exemption for signal bells in Section 22-54(a). Based on the pleadings, the next event in this drama was the institution of this litigation.

### d. Procedural Background

On July 5, 2013, Mr. Devaney initiated this action, with a request to proceed *in forma pauperis,* triggering this Court's obligation to screen pursuant to 28 U.S.C. § 1915. ECF Nos. 1, 2. Based on that review, I recommended that he be denied *in forma pauperis* status and that he be directed to amend his complaint, which named only the Rhode Island Attorney General and focused only on the Rhode Island Religious Freedom Restoration Act, R.I. Gen. Laws § 42-80.1-3, with no articulation of how the Act affects the bells of Narragansett. ECF No. 6. In response, Mr. Devaney filed his Amended Complaint, naming the Churches, the Town and Roman Catholic clerics ranging from the Bishop of Rhode Island, to the Papal Nuncio, to Pope Francis in Rome. Most of the Defendants (but not the Papal Nuncio or Pope Francis) were joined and promptly filed motions to dismiss arguing that the Amended Complaint still focused on the Religious Freedom Restoration Act and still failed to articulate any plausible linkage between it and Mr. Devaney's frustration with the clanging of the bells. I again recommended that the

Amended Complaint be dismissed with leave to replead a third time. This time, however, I included a caution that Mr. Devaney may not get another chance. ECF No. 30 at 8 n.10.

Mr. Devaney timely filed the Second Amended Complaint on April 3, 2014. Instead of the Religious Freedom Restoration Act, it focuses on the Noise Ordinance, alleging that the Ordinance, which caused the Town to refuse to muffle the bells of St. Thomas and St. Peter's Churches, violates the Establishment Clause of the First Amendment, constitutes an unlawful taking of his home in violation of the Fifth Amendment, has deprived him of property without due process of law in violation of the Fifth and Fourteenth Amendments, and singles him out for disparate treatment in violation of the Equal Protection Clause of the Fourteenth Amendment. ECF No. 33.

The Defendants have all moved to dismiss under Fed. R. Civ. P. 12(b)(6),[9] arguing that the Noise Ordinance does not infringe the First Amendment because it serves a secular purpose, is largely secular in effect and does not establish either any specific religion or religion in general; that there are no allegations of discriminatory treatment sufficient to deprive Mr. Devaney of his Equal Protection rights; and that his Due Process claim fails because the private conduct of the Churches, and not any action of the Town, diminished the value of his home. The Town contends that it should not be exposed to the nuisance claims, while the Churches argue that they should not have to defend the claim that governmental action deprived Mr. Devaney of his constitutional rights. The Roman Catholic Bishop contends that the pleading against him

---

[9] St. Peter's Church also relies on Fed. R. Civ. P. 12(b)(1), asking this Court to focus on lack of federal subject matter jurisdiction based on the failure to plead a claim invoking federal law. I rejected that ground for dismissal of Mr. Devaney's Amended Complaint, finding that his invocation of federal question jurisdiction cleared the threshold, though barely, so that consideration of the motions under Fed. R. Civ. P. 12(b)(6) was permissible. ECF No. 30 at 6-7. This Court accepted that recommendation. ECF No. 31. By contrast with the Amended Complaint, where the federal question was tepidly articulated, Mr. Devaney's Second Amended Complaint squarely asserts claims arising under the United States Constitution. Accordingly, I reject St. Peter's invitation to consider its motion based on the failure to plead a marginally-colorable federal claim. See United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006).

fails to state a claim. Finally, if the federal claims are dismissed, all Defendants ask this Court to decline to exercise supplemental jurisdiction over the remaining state law nuisance claims.

## II.     STANDARD OF REVIEW

Rule 12(b)(6) permits this Court to dismiss an action for failure to state a claim upon which relief can be granted. See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (citing Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and allege a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). A plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 52-53 (1st Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555 (court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Because a municipal ordinance is at the center of this case, I pause to assemble the state law principles applicable to interpreting ordinances. First, the Rhode Island Supreme Court directs that the same rules of construction used with statutes are applicable, Auger, 44 A.3d at 1226, beginning with the axiomatic proposition that, if an ordinance is clear and unambiguous, it should be enforced as written, with the words being given their plain and ordinary meaning. Ruggiero v. City of Providence, 893 A.2d 235, 237 (R.I. 2006). Further, any challenge to the

10

ordinance must overcome the presumption that the enactment is constitutional.  State v. Russell, 890 A.2d 453, 458 (R.I. 2006); see also State ex rel. Westerly v. Bradley, 877 A.2d 601, 605 (R.I. 2005).  Courts must "attach every reasonable intendment in favor of . . . constitutionality in order to preserve the statute."  Gem Plumbing & Heating Co. v. Rossi, 867 A.2d 796, 808 (R.I. 2005) (internal quotation marks omitted).  In so interpreting an ordinance, courts should read it as a whole with individual sections considered in the context of the entire scheme.  In re Brown, 903 A.2d at 149.  Finally, the party contesting constitutionality, here Mr. Devaney, bears "the burden of proving beyond a reasonable doubt that the challenged enactment is unconstitutional."  Auger, 44 A.3d at 1226.

## III.    LEGAL ANALYSIS

Before turning to the core constitutional issues presented by the Second Amended Complaint, I dispose first of threshold pleading insufficiencies requiring that various aspects of the Second Amended Complaint be cured or trimmed away.

First, Mr. Devaney's right to bring suit to redress constitutional deprivations cannot ride on the back of the Constitution itself, because it does not create a private right of action for the remedies he seeks.  GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1253-54 (11th Cir. 2012).  The Second Amended Complaint lacks a talismanic invocation of 42 U.S.C. § 1983, which is essential to state a claim under the First, Fifth and Fourteenth Amendments.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001).  Although Defendants urge me to strictly apply this rule and recommend dismissal on this ground, I decline the invitation, mindful of Mr. Devaney's *pro se* status and the inefficiency of sending this case through another round of pleading and motions.  Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (liberal reading of two amended complaints plainly indicates that they comprise § 1983

claims); Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1072 (D.N.M. 2010)

(court assumes plaintiffs assert § 1983 claims). Instead, I will assume that § 1983 is the vehicle

through which Mr. Devaney asserts his constitutional claims, noting that, if my recommendation

of dismissal for failure to state a claim is not adopted, this deficit must be cured.

Second, Mr. Devaney's common law private nuisance claim against the Town lacks

plausibility. His pleading – both the Amended and Second Amended Complaints – is pellucid in

laying out the elements of a common law claim of private nuisance based on the actions of the

two Churches in invading his home with unreasonable and unwelcome sound.[10] There is no

allegation plausibly suggesting that the Town is responsible for their conduct. Rather, Mr.

Devaney blames the Town for exempting the Churches from the Noise Ordinance; it is not

alleged to have had any involvement in the Churches' determination of how loud or how

frequently to ring their bells. See Caldarola v. Town of Smithtown, No. 09-272, 2010 WL

6442698, at *12, 15 n.7 (E.D.N.Y. July 14, 2010) (actions of churches in ringing bells and

running carnival not imputable to town in First Amendment context; state law private nuisance

---

[10] Under Rhode Island law, private nuisance "arises from the unreasonable use of one's property that materially interferes with a neighbor's physical comfort or the neighbor's use of his real estate." Hydro Mfg., Inc. v. Kayser-Roth Corp., 640 A.2d 950, 957 (R.I. 1994) (citing Weida v. Ferry, 493 A.2d 824, 826 (R.I. 1985)). A person is not required to suffer a neighbor's unreasonable use of his property even though that use is permitted by a zoning ordinance. Weida, 493 A.2d at 826; DeNucci v. Pezza, 329 A.2d 807, 810 (1974). Noise constitutes a private nuisance if it unreasonably interferes with a person's use and enjoyment of his property and the harm or risk is greater than he ought to be required to bear under the circumstances. Citizens for Pres. of Waterman Lake v. Davis, 420 A.2d 53, 59 (R.I. 1980). Analogous nuisance principles have been successfully deployed to enjoin church bells as long as the public need is not outweighed by the harm they do to particular residents. Terhune v. Tr. of Methodist Episcopal Church, 100 A. 342, 342-43 (N.J. Ch. 1917); see Traetto v. Palazzo, 91 A.3d 29, 34 (N.J. Super. Ct. App. Div. 2014) (citing Terhune with approval); see also Osthaus v. Robinson, 12 Pa. D. 25, 26 (Pa. C.P. 1902) (citing earlier case for proposition that "ringing of church bells, if sufficient to annoy and disturb residents of the neighborhood in their homes and occupations, was a nuisance"); Rogers v. Elliott, 15 N.E. 768, 771 (Mass. 1888) (persons suffering from ringing of church bells can sue for private nuisance). Mr. Devaney does not assert a claim of public nuisance. Davis, 420 A.2d at 59 (public nuisance is unreasonable interference with health, safety, peace, comfort or convenience of general community); see Caldarola v. Town of Smithtown, No. 09-272, 2010 WL 6442698, at *15-16 (E.D.N.Y. July 14, 2010) (applying New York law, public nuisance claim based on town's failure to enforce ordinances against church bells and carnival rejected because injury did not interfere with right common to public and plaintiffs did not allege special injury).

claim brought only against churches). In addition, Mr. Devaney has failed to comply with R.I.

Gen. Laws § 45-15-5, which makes notice and a demand on the Town Finance Director non-

waivable prerequisites to pursuit of a state law damage claim against the Town. Serpa v.

Amaral, 635 A.2d 1196, 1198-99 (R.I. 1994) (notice requirement not waived by town's

knowledge of claim); Mesolella v. City of Providence, 508 A.2d 661, 666 (R.I. 1986) (failure to

give notice and name town treasurer results in dismissal of claim); Valcourt v. City of

Providence, 26 A. 45, 46 (1893) (claim may not be brought against town in its corporate name).

Accordingly, I recommend that the state law private nuisance claim against the Town be

dismissed.

Third, the Churches and the Bishop argue that they did not pass the Ordinance and are

private actors that cannot be held liable for an unconstitutional action by a state actor, like the

Town, either pursuant to 42 U.S.C. § 1983 or pursuant to the Due Process Clause of the

Fourteenth Amendment, which provides that "[n]o State shall . . . deprive any person of life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; see Lugar v.

Edmondson Oil Co., Inc., 457 U.S. 922, 936 (1982) ("Careful adherence to the 'state action'

requirement preserves an area of individual freedom by limiting the reach of federal law and

federal judicial power."). In Lugar, the Supreme Court emphasized the importance of protecting

private parties from constitutional litigation simply for relying on an ordinance governing their

interactions with the community surrounding them. Id. at 937-39. Mr. Devaney alleges no more

than reliance by the Churches on the Town's bell exemptions and their exercise of the choice to

ring their bells on their own initiative and not as compelled, required or encouraged by the Town.

Jackson v. Metro. Edison Co., 419 U.S. 345, 350-51 (1974); see Moose Lodge No. 107 v. Irvis,

407 U.S. 163, 172-73 (1972) (when state is not responsible for private decision to behave in a

certain way, such private action is not "state action"). Accordingly, I recommend that all of the constitutionally grounded claims against the Churches and the Bishop be dismissed.

### a. Standing

Before turning to the constitutional analysis, this Court must address and resolve Mr. Devaney's standing even though Defendants neither briefed nor argued it. Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 52 (1st Cir. 2014). The presence or absence of constitutional standing implicates a federal court's subject matter jurisdiction. Id.; Ahlquist v. City of Cranston, 840 F. Supp. 2d 507, 517 (D.R.I. 2012). To have standing, a plaintiff does not need to show that his rights have actually been abridged: such a requirement "would conflate the issue of standing with the merits of the suit." Aurora Load Servs., Inc. v. Craddieth, 442 F.3d 1018, 1024 (7th Cir. 2006). However, he must have suffered an actual or threatened injury that is traceable to the alleged act of the defendant and that would be redressable by a favorable decision by the Court. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982); Antilles Cement Corp. v. Fortuno, 670 F.3d 310, 317-18 (1st Cir. 2012). Courts may not consider the merits of any claim unless the party seeking to invoke the Court's jurisdiction can establish the requisite standing. Rogers v. Mulholland, 858 F. Supp. 2d 213, 221 (D.R.I. 2012).

Mr. Devaney has made a blunderbuss challenge to the constitutionality of the Noise Ordinance, contending that his injury – diminution in the value of his home, the loss of family and friends and the destruction of his peace of mind – has been caused by the Town's refusal to muffle the bells because they are linked to religious places of worship. ECF No. 33 ¶ 14 ("If properly enforced the abusive liturgical bell ringing by the Catholic church and the Episcopal church would have to be abated."). The fly in the ointment is that his injury is caused by the

noise of bells; a declaration of unconstitutionality of the portion of the Noise Ordinance that exempts bells used in conjunction with places of worship would not silence the bells because the Ordinance also exempts both musical performances by tower bells and non-emergency signaling by stationary bells (subject to the one-minute-per-hour limit). Both of these exemptions are entirely secular with no special treatment for bells linked to places of worship. Since both Churches house stationary bells in towers, both may continue to ring their bells in reliance on either or both of these secular exemptions. And Mr. Devaney's Second Amended Complaint makes no distinction, alleging only that his injury is caused by the tolling of the bells of St. Thomas and St. Peter's Churches, including no mention whether they ring as signaling devices for more than one minute per hour.

This specter – that a favorable decision barring enforcement of the only provision of the Noise Ordinance linked to religion may well not redress Mr. Devaney's injury – raises a serious concern whether Mr. Devaney has standing to sue the Town based on an Establishment Clause violation. See Serv. Emps. Int'l Union, Local 5 v. City of Houston, 595 F.3d 588, 598 (5th Cir. 2010) (plaintiff did not have standing to raise content discrimination claim against municipal sound ordinance that granted exemptions to church bells because the exemption did not interfere with plaintiff's planned activity); Liddle v. Corps of Eng'rs of U.S. Army, 981 F. Supp. 544, 557 n.21 (M.D. Tenn. 1997) (plaintiff lacks standing to pursue Establishment Clause claim where his complaint about lease of government-owned park land to YMCA, a Christian organization, was based on resulting limit on his access and use of land, an injury that would be the same if the lease was with a secular entity). I nevertheless conclude that Mr. Devaney has standing to bring his Establishment Clause challenge based on a single thread in the Second Amended Complaint: his allegation that the Town, through its solicitor, told him that the Town's position that the bells

are exempt is based on the religiously-grounded exemption in Section 22-54(b), with no mention of the secular exemptions in Sections 22-50 or 22-54(a). Taking this allegation as true, this Court may infer that the Town declined to enforce the Noise Ordinance because these are bells used in conjunction with places of religious worship. This is sufficient to give Mr. Devaney standing.

     **b.**     **First Amendment**

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. "[It] has historically been an indefatigable sentry, patrolling the actions of government to prevent incursions upon our cherished religious liberty." Fausto v. Diamond, 589 F. Supp. 451, 496 (D.R.I. 1984) (Selya, J.). Its mandate was extended to the states with the enactment of the Fourteenth Amendment. Ahlquist, 840 F. Supp. 2d at 520. The guiding principle of Establishment Clause jurisprudence has been government neutrality. Id. "When government acts with the extensible and predominant purpose of advancing religion, it violates that central Establishment Clause value of official religious neutrality, there being no neutrality when the government's ostensible object is to take sides." McCreary Cnty. v. ACLU of Ky., 545 U.S. 844, 860 (2005).

To guide federal courts in examining the Establishment Clause claims, the Supreme Court has developed an array of analytical tools. Ahlquist, 840 F. Supp. 2d at 520. In so doing, the Court has counseled that, while a specific test might be "useful," federal courts should not "be confined to any single test or criterion in this sensitive area."[11] Fausto, 589 F. Supp. at 464 (quoting Lynch v. Donnelly, 465 U.S. 668, 679 (1984)). Whatever test is used, Mr. Devaney, as

---

[11] As a result, some courts have labelled First Amendment jurisprudence as "muddled." Rogers v. Mulholland, 858 F. Supp. 2d 213, 224 (D.R.I. 2012) (citing Bauchman v. W. High Sch., 132 F.3d 542, 551 (10th Cir. 1997)).

Plaintiff, has the burden of establishing the violation.  Am. Atheists, Inc. v. Davenport, 637 F.3d 1095, 1118 n.10 (10th Cir. 2010).

The most-used litmus is found in Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971), which requires that a legislative act must satisfy three criteria to survive an Establishment Clause challenge; it must: (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion. Lee v. Weisman, 505 U.S. 577, 585 (1992).  Subsequent case development added the endorsement analysis articulated by Justice O'Connor in her concurrence in Lynch, 465 U.S. at 688, and the coercion analysis of Weisman, 505 U.S. at 587.  See Freedom from Religion Found. v. Hanover Sch. Dist., 626 F.3d 1, 7 (1st Cir. 2010); Ahlquist, 840 F. Supp. 2d at 520; Rogers, 858 F. Supp. at 224.  Cases dealing with claims based on religious accommodation use these tests to examine legislative enactments that exempt religious entities from regulation, benefiting the sectarian to the cost of the secular.  See, e.g., Bd. of Educ. v. Grumet, 512 U.S. 687, 705, 710 (1994) (Blackmun, J., concurring) (state may accommodate religious needs by alleviating special burdens, but enactment must be neutral, consistent with Lemon); Serv. Emps. Int'l Union v. City of Houston, 542 F. Supp. 2d 617, 632 n.4 (S.D. Tex. 2008) (exemption from noise ordinance for church bells and chimes found content-neutral and legitimate accommodation to religious belief, citing Lemon), reversed on other grounds, 595 F.2d 588 (5th Cir. 2008); Rojas v. Fitch, 928 F. Supp. 155, 166 (D.R.I. 1996) (Lemon test used to find no Establishment Clause violation in law exempting religious entities from payment of unemployment tax).  Most recently, the Court ignored Lemon in favor of an examination of historic considerations.  Town of Greece v. Galloway, 134 S. Ct. 1811, 1819 (2014); see Marsh v. Chambers, 463 U.S. 783, 792, 795 (1983) (where the "practice of opening legislative sessions with prayer has become part of the fabric of

our society," it is sustained without need to subject it to formal tests customarily used to determine First Amendment challenges); Laurence H. Tribe, <u>American Constitutional Law</u> § 14-9 at 1205 n.2 (2d ed. 1988) (noting that, prior to <u>Town of Greece</u>, the only exception to use of <u>Lemon</u> test was <u>Marsh</u>).

In <u>Freedom from Religion Foundation v. Hanover School District</u>, our Circuit deployed each approach seriatim. 626 F.3d 1, 7 (1st Cir. 2010). I will do the same. <u>See</u> <u>Ahlquist</u>, 840 F. Supp. 2d at 521. I begin with <u>Town of Greece</u> to examine whether the ringing of bells is so embedded in our national history and tradition since the founding of the Republic that the Noise Ordinance exemption protecting that sound from the stifling effects of regulation survives an Establishment Clause challenge without resort to application of <u>Lemon</u> or other tests. 134 S. Ct. at 1818-19 (citing <u>Marsh v. Chambers</u>).

### The <u>Town of Greece/Marsh</u> test

While the Supreme Court has provided little or no guidance to lower courts regarding how to perform a <u>Town of Greece/Marsh</u> analysis, it has conducted the inquiry by referring to secondary sources to determine whether a religious symbol constitutes a governmental endorsement of religion because this question is not merely one of historical fact, but rather "in large part a legal question to be answered on the basis of judicial interpretation of social facts." <u>Brooks v. City of Oak Ridge</u>, 222 F.3d 259, 265 n.4 (6th Cir. 2000) (quoting <u>Lynch</u>, 465 U.S. at 694 (O'Connor, J., concurring)). A review of secondary sources establishes that, in New England, at the time of the founding of the nation, "[e]ighteenth-century Americans inhabited a world in which bells sounded frequently, in different ways, and for a variety of purposes." Lubken, <u>Joyful Ringing, Solemn Tolling: Methods and Meanings of Early American Tower Bells</u>, 69 Wm. & Mary Q. 823, 823 (2012). For example, tolling bells rang in Providence,

Rhode Island, on March 2, 1775, when the Sons of Liberty consigned East India tea to the flames of a bonfire.  Id.  "Most communities used ringing to mark the passage of time, to open markets, to summon churchgoers to religious services and civic leaders to meetings, and to call inhabitants to mutual assistance in moments of danger.  Ringing was also the method used for veneration and celebration: to observe the king's (and later the president's) birthday, to honor the arrival of important figures, to mark significant dates such as Christmas Eve and the anniversary of the thwarted Gunpowder Plot, and to respond to news of military and political victories."  Id. at 832-33.  As one historian put it, "[b]ells and other devices – some seldom thought of as sonic instruments – did more than ring out to the heavens; they rang in the state."  Rath, How Early America Sounded 50 (2003).  "New England towns used instrumental sounds to order their worlds.  Bells were important from the very beginning of Puritan New England."  Id. at 61. Since the seventeenth century, they have become deeply embedded in both the New England and the national tradition.  See Proclamation 5509, 51 Fed. Reg. 24507 (July 2, 1986) (President Reagan proclaims July 3, 1986, as "Let Freedom Ring Day" and encourages ringing of bells in celebration); n.8, supra (almost 40% of Rhode Island municipalities expressly exempt some bell ringing from noise regulation).

Narragansett's decision to exempt performing and signaling bells – both secular and sectarian – reflects this historic legacy.  See Harris v. City of Chicago, 218 F. Supp. 2d 990, 996 (N.D. Ill. 2002) ("Bell ringing is long associated with solemn events, and is not an excessive entanglement of government and religion.").  The added exemption permitting bells linked to places of worship to ring as signaling devices without the one-minute-per-hour limit imposed on other signals similarly seems well grounded in New England's cultural tradition.  Accordingly,

this Court must "acknowledge a practice that was accepted by the Framers and has withstood the critical scrutiny of time and political change." Town of Greece, 134 S. Ct. at 1819.

It must also be noted that, unlike the legislative prayer found constitutional in Town of Greece and Marsh, the Town of Narragansett neither sponsors the chiming of the bells nor links its exemption to the religious content of the bells' communications. Rather, it has merely exempted them from the regulatory impact of its Noise Ordinance, deeming them to constitute sounds "essential to the quality of life in the community," and permitting them to ring agnostically without the limits placed on other sounds by the Noise Ordinance. Noise Ordinance § 22-41(5); see §§ 22-50, 22-54. Thus, the governmental coercion arguably present when a town sponsors legislative prayer at the opening of town board meetings is entirely missing from the bell ringing in Narragansett. Town of Greece, 134 S. Ct. at 1818, 1828 (despite claims by plaintiffs that "steady drumbeat" of Christian prayer at town board meetings created pressure that forced nonadherents to remain or even feign participation to avoid offending representatives who sponsor prayer and will vote on matters, no Establishment Clause violation).

In all, it is tempting to conclude that the Town of Greece/Marsh directive to interpret the Establishment Clause as permitting government action that preserves practices that are deeply embedded in history and tradition ends the inquiry. Nevertheless, both Town of Greece and Marsh involved more developed factual records, Town of Greece having been decided at the summary judgment phase, 134 S. Ct. at 1817, while Marsh was resolved after trial, 504 F. Supp. 585, 586 (D. Neb. 1980). Neither was determined in the factual vacuum of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Accordingly, I proceed next to examine the Town's conduct under the Lemon test, as amplified by Justice O'Connor's endorsement test, mindful of the Town

of Greece imperative that courts must "acknowledge a practice that was accepted by the Framers and has withstood the critical scrutiny of time and political change." 134 S. Ct. at 1819.

### The <u>Lemon</u>/endorsement test

The first leg of the tripartite <u>Lemon</u> test requires an examination of the purpose of the Noise Ordinance. <u>Hanover Sch. Dist.</u>, 626 F.3d at 9; <u>Rogers</u>, 858 F. Supp. 2d at 224; <u>Ahlquist</u>, 840 F. Supp. 2d at 521. Unlike the prayer posted on the wall of the school gymnasium in <u>Alhquist</u>, the Noise Ordinance's expressly stated purpose is purely secular – it regulates decibels, blind to the content of the affected speech, to protect Town residents from noise disturbances while permitting noises that are essential to the quality of life. <u>See</u> <u>Wallace v. Jaffree</u>, 472 U.S. 38, 74-75 (1985) ("If a legislature expresses a plausible secular purpose for a . . . statute in either the text or the legislative history . . . then courts should generally defer to that stated intent."); <u>cf.</u> <u>Alhquist</u>, 840 F. Supp. 2d at 522 ("Cranston's purposes in installing and, more recently, voting to retain the Prayer mural are not clearly secular."). Similarly, the exemptions for "performances by the ringing of bells in a tower" and for bells when used as non-emergency signaling devices are both purely secular and unrelated to religion. These exemptions apply equally to bells in a school, university, governmental building, factory, in short anywhere, and represent the secular determination of the Town Council that bells are a positive contributor to the quality of life in Narragansett and should not be subject to restrictions on sound.

Even if the Court hypothesizes that the incremental exemption for signaling bells linked to places of worship was adopted as a permissive accommodation to avoid burdening religious speakers,[12] the overwhelming purpose of the Noise Ordinance remains secular. Moreover, even

---

[12] St. Thomas Church argues that the add-on exemption allowing bells associated with places of worship to ring without regard to the one-minute-per-hour limit may be interpreted from a reading of the plain language of the Noise Ordinance as derived from a legislative determination that church bells are not a signal that might be confused with

this overtly religious exemption carves out places of worship as speakers, but does not address the content of their speech.[13]  See DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1266 (11th Cir. 2007) (noise ordinance that regulates sound based on volume and "does not distinguish, for example, between excessively loud singing, thunderous classical music recordings, reverberating bass beats, or television broadcasts" is content-neutral and does not restrain protected speech); Hampsmire v. City of Santa Cruz, 899 F. Supp. 2d 922, 931 (N.D. Cal. 2012) (ordinance that is speaker-based, in that it exempts certain speakers, is not, without more, content-based).  Narragansett merely permits, but does not mandate, places of religious worship to signal with a bell that sounds for more than a minute per hour.  Read in the context of the Noise Ordinance and mindful of the history and tradition of bell-ringing in Rhode Island and New England, I find that the Noise Ordinance reflects a clearly secular purpose.  Fausto, 589 F. Supp. 467-68 (where secular goals of town predominate over religiously inspired purpose, ordinance is constitutional); see Grayned v. City of Rockford, 408 U.S. 104, 116 (1972) ("If overamplified loudspeakers assault the citizenry, government may turn them down.").

The second Lemon leg examines the effects of the Town's action.  In giving content to the effects analysis, Justice O'Connor suggested that it be considered through the framework of endorsement.  Lynch, 465 U.S. at 688 (O'Connor, J. concurring) ("Endorsement sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.").  Pursuant to the effects/endorsement component of the Lemon test, the Court examines whether the actions of the Town have the "purpose or effect of endorsing, favoring or

_____

emergency signals (which also have no time limit).  ECF No. 39-1 at 10.  The difficulty with this interpretation is that secular bells do not sound differently from church bells, yet they remain subject to the time limit.

[13] For example, a bell used in conjunction with a place of worship might ring for more than one minute to signal the celebration of the Fourth of July.

promoting religion" or whether the government's involvement with a religious activity is so pervasive as to apply subtle coercive pressure to participate in prayer. Hanover Sch. Dist., 626 F.3d at 10. Simply put, the Town must not appear to take sides on matters of religious belief. Alhquist, 840 F. Supp. 2d at 523.

One might superficially posit that the general effect of the Noise Ordinance is to elevate the sound of bells above ambient levels in the Town, with catastrophic impact on Mr. Devaney, who has lost the quiet enjoyment of his home and who cannot escape the unwelcome religious content that the bells relentlessly inflict on him.[14] However, such a perspective is wrongly focused not on the effect of the action of the Town, but rather on the effect of the action of the Churches, which have taken advantage of – perhaps abused – the exemption to Mr. Devaney's detriment.[15] Establishment Clause cases emphasize that a reviewing court's laser light must shine only on the effects of the Town's conduct. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 337 (1987) ("For a law to have forbidden 'effects' under Lemon, it must be fair to say the *government itself* has advanced religion through its own activities and influence.") (emphasis in original).

Here, the Town adopted a Noise Ordinance that exempts all performing bells, and partially exempts all non-emergency signaling bells, with an additional limited exemption for bells used in connection with places of worship; when Mr. Devaney complained, the Town

---

[14] It must be noted that the religious content comes only from the bells of St. Thomas Church. St. Peter's Church merely marks the hours, a secular function of bells well embedded in history. See Lubken, Joyful Ringing, Solemn Tolling: Methods and Meanings of Early American Tower Bells, 69 Wm. & Mary Q. 823, 832 (2012) (bells used to mark passage of time).

[15] If they have, they may be called to account as a result of Mr. Devaney's private nuisance claim against them. See Terhune, 100 A. at 342-43 (injunction against church bells whose striking of the hours woke babies, prevented night workers from sleeping, stifled conversation in homes and caused houses to vibrate); but see Impellizerri v. Jamesville Federated Church, 428 N.Y.S.2d 550, 551-52 (N.Y. Sup. Ct. 1979) (nuisance complaint against church bells dismissed based on lack of allegation that bell ringing was producing unwanted effect on ordinary person in plaintiff's circumstances; noting that bells are "a tradition throughout the world" and that people "find total beauty in the sounds of bells").

declined to enforce the Ordinance based on the latter exemption.[16]  Like the plaintiff in Brooks, 222 F.3d at 264, who was troubled by a bell placed in a city park that had religious connotations associated with Buddhism, Mr. Devaney claims to know that at least some of the offensive (to him) sounds constitute a call to prayer.  Nevertheless, the Second Amended Complaint nowhere alleges that a reasonable observer of bell ringing in Narragansett would conclude that it connotes endorsement of religion by the Town.  See Brooks, 222 F.3d at 266 (when "the reasonable observer would not understand the Friendship Bell display, in context, to convey the message that the government of Oak Ridge endorses Buddhism," the impermissible effect of endorsing religion not present).  The religious content is added when the Churches ring the bells, not when the Town declines to regulate the decibels they emit.  Rather, the effect of the Town's action is to unmuffle the Town's bells to sound above ambient levels without interference by regulation; there is no plausible allegation that this action has the effect of endorsing religion.  See Impellizerri v. Jamesville Federated Church, 428 N.Y.S.2d 550, 552 (N.Y. Sup. Ct. 1979) (church bells playing music, including hymns, does not infringe right to religious freedom of neighbors who are forced to listen).

---

[16] While Mr. Devaney purports to question the Town's interpretation of its Ordinance (that the bells are exempt), ECF No. 33 ¶¶ 14-15, I find that the Noise Ordinance clearly exempts the ringing of the Church bells, so that the Town's failure to enforce the Ordinance against the Churches is not a separate act inflicting a potential constitutional injury.  Moreover, even if the Churches arguably were violating the Noise Ordinance, failure to enforce, standing alone, does not constitute the unlawful establishment of religion.  Diehl v. Vill. of Antwerp, 964 F. Supp. 646, 651 (N.D.N.Y. 1997) (constitutional claims against village based on failure to enforce noise ordinance against church music sixteen times higher than ambient sound dismissed because plaintiffs "have not detailed how a failure to enforce a noise ordinance . . . amounts to state action endorsing religion").  Thus, to the extent that the Second Amended Complaint is interpreted as asserting a failure to enforce claim, it would fail because a municipality normally may not be liable for failure to enact or enforce an ordinance.  See Gercey v. United States, 409 F. Supp. 946, 953-54 (D.R.I. 1976); see also Hendricks v. Bald, No. 01-307-M, 2002 WL 385013, at *3 (D.N.H. Mar. 12, 2002) (Due Process Clause does not impose obligation to enforce ordinances).  This is based on the well-settled principle that a constitutional claim against a municipality based on the failure to enforce an ordinance cannot proceed unless the claimant can show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); see Caldarola, 2010 WL 6442698, *14-15 (claim based on refusal to enforce noise ordinance against church bells fails because of failure to plead that policy of municipality resulted in deprivation of constitutional right).  In addition, in the absence of clear and direct evidence of unconstitutional bias, prosecutorial discretion may not be subjected to scrutiny for equal protection or other constitutional violations.  McCleskey v. Kemp, 481 U.S. 279, 297, 315-16 (1987).

Lemon's third prong requires that the government conduct avoid entanglement with religion. Rogers, 858 F. Supp. 2d at 227 (quoting Alhquist, 840 F. Supp. 2d at 521). "Entanglement must be 'excessive' before it runs afoul of the Establishment Clause." Agostini v. Felton, 521 U.S. 203, 233 (1997). The entanglement inquiry looks to the character and purposes of the benefited institutions, the nature of the aid that the government provides and the resulting relationship between government and the religious entity. Id. at 232. This Court must consider whether the conduct requires pervasive monitoring by public authorities, administrative cooperation between government and religious entities, and whether it creates political divisiveness. Rogers, 858 F. Supp. 2d at 227. The last two considerations (administrative cooperation and political divisiveness) are insufficient by themselves to create excessive entanglement. Agostini, 521 U.S. at 233.

Viewed most narrowly, the benefited institutions in Narragansett are the places of worship that use stationary bells for signaling; the aid they get from the Town is the ability to use their bells to signal without worrying about the one-minute-per-hour limit. However, there is no monitoring, administrative activity, interplay or interaction alleged between the Churches and the Town; Narragansett makes no financial contribution to encourage or assist with the ringing of the bells, nor is there any allegation of political divisiveness created by the bell exemption. Ahlquist, 840 F. Supp. 2d at 522-23 (finding excessive entanglement based in part on divisiveness of political debate over whether Prayer Mural should remain; "[w]hen focused on the Prayer mural, the activities and agenda of the Cranston School Committee became excessively entangled with religion, exposing the [School] Committee to a situation where a loud and passionate majority encouraged it to vote to override the constitutional rights of a minority").

While the Ordinance may benefit the Churches and other places of worship that have bells, the nature of the benefit is secular and totally unrelated to whatever content the Churches might choose to inject.  Moreover, even if the Ordinance specifically exempted the religious speech of places of worship, "allowing people with religious faith to advance their religions is not what is meant by 'establishment of religion;' rather, for state action to constitute establishment of religion in violation of establishment clause, *state action itself must constitute endorsement of religion*."  Diehl v. Vill. of Antwerp, 964 F. Supp. 646, 651 (N.D.N.Y. 1997) (emphasis in original) (quoting Hsu ex rel. Hsu v. Roslyn Union Free Sch. Dist. No. 3, 85 F.3d 839, 866 (2d Cir. 1996)).  Narragansett's Noise Ordinance creates no relationship between the Town and the religious entities and does not give rise to excessive entanglement.  Rogers, 858 F. Supp. 2d at 227; see Harris, 218 F. Supp. 2d at 996 (bell ringing at ceremony to mark 9/11 anniversary not excessive entanglement).

### The coercion test

The coercion test looks at whether the government is coercing "anyone to support or participate in religion or its exercise, or otherwise act[ing] in a way which 'establishes a [state] religion or religious faith, or tends to do so.'"  Weisman, 505 U.S. at 587 (quoting Lynch, 465 U.S. at 678)).  It is an elemental First Amendment principle that government may not coerce its citizens "to support or participate in any religion or its exercise."  Town of Greece, 134 S. Ct. at 1825 (quoting Cnty. of Alleghany v. ACLU, 492 U.S. 573, 659 (1989)).  Just because religious speech gives offense and makes a nonbeliever feel disrespected and excluded, "[o]ffense, however, does not equate to coercion."  Town of Greece, 134 S. Ct. at 1826 (portion of opinion joined by only three Justices).

Mr. Devaney's Second Amended Complaint effectively claims that he is coerced to hear unwelcome and jarring sounds, including a call to "Christian prayer and devotion." ECF No. 5 at 2. However, the Complaint does not claim, nor does it allege facts that permit the inference, that he has been coerced to participate in or support religion or into feigning participation in the Angelus or any other prayer; rather, he is annoyed by the interruption and injured because the sounds destroy his ability to peaceably enjoy his home. Impellizerri, 428 N.Y.S.2d at 551-52 (church bell ringing at volume that causes migraines and disrupts conversation does not infringe religious freedom even though hymns may be played). While Mr. Devaney may be forced to listen, he does not contend that he, or any other Town resident, is coerced, subtly or otherwise, to participate in worship or prayer. Alhquist, 840 F. Supp. 2d at 524.

### Permissive accommodation

The Supreme Court has long recognized a zone of permissible accommodation of religion within which governments may, and sometimes must,[17] exempt religious practice from regulation without running afoul of the Establishment Clause. Hobbie v. Unemployment Appeals Comm'n, 480 U.S. 136, 144-45 (1987). Nevertheless, at least one respected commentator has warned that "unbounded tolerance of governmental accommodation in the name of free exercise neutrality could eviscerate the establishment clause." Tribe, American Constitutional Law § 14-7 at 1195 (2d ed. 1988). Thus, "[t]he First Amendment . . . gives no

---

[17] At least one court, in an unreported decision, has held that a noise ordinance that did not exempt churches, thereby stifling their ability to use their bells to proselytize and call the faithful to worship, violated the Free Exercise Clause. St. Mark Roman Catholic Parish v. City of Phoenix, No. CV 09-1830-PHX-SRB, ECF No. 37 (D. Ariz. Mar. 3, 2010). In City of Phoenix, the court faced a Free Exercise challenge to a municipal noise ordinance by two churches, which had stopped ringing their bells for fear of prosecution. Id. at 3. The churches alleged that their bells were inextricably intertwined in the exercise of their religions and could not be silenced without "silencing the voice of the entire people of the church community." Id. Although the noise ordinance was facially neutral, the court found a Free Exercise violation because the ordinance did not exempt bells associated with religious activities although other exemptions had been carved out for other speakers. With no effort by the city to narrowly tailor the stifling impact of the ordinance on the bells, the court held that the exemptions had to be expanded to cover religious expression. Id. at 18-19.

one the right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities." Estate of Thornton v. Caldor, Inc., 472 U.S. 703, 710 (1985) (statute forcing employers to allow all employees to choose individualized day of worship violates Establishment Clause). On the other hand, the Establishment Clause is not violated by a state law that creates an exemption from regulation for various categories of persons or entities, including religious entities, as long as no sectarian purpose is evinced by such statutes and the religious benefit is purely incidental. Rojas, 928 F. Supp. at 164.

To the extent that they have considered the question, courts have concluded that an exemption to a noise ordinance for church bells and chimes, even when allegedly content-based because linked to religious services, is a legitimate accommodation to religious belief. See Stokes v. City of Madison, 930 F.2d 1163, 1171 (7th Cir. 1991); City of Houston, 542 F. Supp. 2d at 632 n.4. Such an exemption is not an impermissible establishment of religion under the First Amendment because church bells are a common part of the background noise of a city, a "traditional and generally unobtrusive aspect of a tranquil environment," Stokes, 930 F.2d at 1171, and have become "part of the fabric of our society . . . simply a tolerable acknowledgment of beliefs widely held among the people of this country." City of Houston, 542 F. Supp. 2d at 632 n.4 (quoting Marsh, 463 U.S. at 792). Legislative exemptions freeing religious organizations from the burdens of regulation are justifiable because religion imposes special burdens not imposed on similarly situated secular organizations and it remains consistent with constitutional principles to allow the legislature to provide special relief to religion from such burdens if it chooses. Frederick Mark Gedicks, The Permissible Scope of Legal Limitation on the Freedom of Religion or Belief in the United States, 19 Emory Int'l L. Rev. 1187, 1227-28 (2005); see, e.g., Grumet, 512 U.S. at 705 ("we do not deny that the Constitution allows the State

to accommodate religious needs by alleviating special burdens"); Diehl, 964 F. Supp. at 651

("allowing people with religious faith to advance their religions is not what is meant by

'establishment of religion;' rather for state action to constitute establishment of religion in

violation of establishment clause, state action itself must constitute endorsement of religion")

(citing Hsu, 85 F.3d at 866).  I find that Narragansett's Noise Ordinance fits neatly into the zone

of permissible accommodation established by this line of cases.

* * * * *

One final note: First Amendment jurisprudence often involves "fact-sensitive" cases,

more appropriately decided at the summary judgment phase or after trial, based on a well-

developed factual record.  See, e.g., Town of Greece, 134 S. Ct at 1818, 1838 (Breyer, J.,

dissenting) (district court decided case based on motion for summary judgment); Rogers, 858 F.

Supp. 2d at 216 (determination following bench trial); Ahlquist, 840 F. Supp. 2d at 510

(determination following consolidated preliminary injunction hearing and trial).  Nevertheless,

when an Establishment Clause challenge rests on a pleading that lacks the essential elements of a

plausible claim, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Caldarola, 2010 WL

6442698, at *1 (challenge to town's refusal to enforce noise ordinance against church bells

dismissed for failure to state a claim); Diehl, 964 F. Supp. at 651 (challenge to village's refusal

to enforce noise ordinance against church bells dismissed for failure to state a claim).  Our

Circuit Court has approved pre-discovery dismissal of an Establishment Clause complaint

alleging that the voluntary recitation of the Pledge of Allegiance in two school districts offends

the First Amendment.  Hanover Sch. Dist., 626 F.3d at 7 & n.13, 10 ("the issue is one of law").

This guidance establishes that, if the complaint is deficient, an Establishment Clause claim

should end with a Fed. R. Civ. P. 12(b)(6) dismissal based on the lack of a plausible complaint.

Based on the foregoing, I find that the Establishment Clause claim in Mr. Devaney's Second Amended Complaint remains fatally deficient. It fails to allege facts plausibly permitting the inference that the content-neutral and largely secular bell exemptions to Narragansett's Noise Ordinance constitute the impermissible establishment of religion. It does not allege that either the Town's enactment of the Ordinance or its refusal to enforce it against the Churches (consistent with its terms) has the effect of coercing him, subtly or otherwise, into prayers or practices that are contrary to his beliefs. There is no allegation permitting the inference that a visitor to Narragansett, upon hearing the chiming of the bells, would conclude that it is a religious message established by the Town Council. There is no suggestion that Narragansett's exemption for bells connected with places of worship is based on a purposeful or surreptitious attempt to express subtle governmental advocacy of a theistic message. Finally, there is no allegation that either the Town's decision to enact the Ordinance or its decision not to enforce it against the Churches was accompanied by the religiously divisive political rhetoric that is a characteristic of governmental actions that do not survive First Amendment scrutiny. Mr. Devaney's understandable[18] rage at the Churches relates to the volume, frequency and religious content of the ringing of the bells. That is a nuisance claim – Mr. Devaney's remedy lies there. It does not rest in a declaration of unconstitutionality of the Noise Ordinance under the Establishment Clause of the First Amendment. I recommend that this Court dismiss Mr. Devaney's attack on its constitutionality.

c.    **Equal Protection**

Mr. Devaney's Equal Protection argument seems to be based on the privilege afforded to bell owners to ring their bells without the constraints imposed on other noise makers. He fails to

---

[18] Understandable, of course, based on the assumption that the facts alleged in his pleading are true, as this Court must assume when assessing whether the Second Amended Complaint states a claim.

note that he would get the same benefit if he built a bell tower and installed a bell. And if he opened a place of worship, he too would be able to ring his bell for more than a minute. If his Equal Protection claim is recast to focus on him as a victim of the bells, his concession at the hearing that he has been treated the same as every similarly situated person in Narragansett is fatal. Ayala-Sepulveda v. Municipality of San German, 671 F.3d 24, 32 (1st Cir. 2012) (equal protection claim requires plaintiff to identify specific instances where persons situated similarly in all relevant aspects were treated differently, demonstrating that plaintiff was singled out for oppression). There is not a whiff of an Equal Protection violation hidden in the Second Amended Complaint. I recommend that any claim purporting to arise under the Equal Protection Clause of the Fourteenth Amendment be dismissed.

### d. Due Process

While far from a clarion of legal clarity, Mr. Devaney's due process claim is grounded in the allegation that the value of his property has been diminished without due process of law. ECF No. 33 ¶ 18. Such a claim potentially arises under the Fifth Amendment based on an unjust taking or under the Due Process Clause of the Fourteenth Amendment based on a government action that deprived him of property without due process of law.

The takings claim, if one is intended, may be disposed of quickly: Mr. Devaney fails to allege that he "has run the gamut of state-court litigation in search of just compensation." Marek v. Rhode Island, 702 F.3d 650, 653 (1st Cir. 2012). His due process claim is also flawed in that Mr. Devaney's allegation against the Town rests on its adoption of the Noise Ordinance – it is well settled that "[t]he procedural due process requirement of notice and hearing is not applicable to a legislative body in the performance of its legislative functions." Q.C. Constr. Co. v. Gallo, 649 F. Supp. 1331, 1335 (D.R.I. 1986). Rather, "procedural due process is a doctrine closely

associated with assuring fairness in regard to the enforcement of laws or the administration of programs . . . the doctrine bears no relation to the initial enactment of a law." Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 746 (1st Cir. 1995). Moreover, it is well settled that a due process claim cannot be based simply on a town's refusal to enforce an ordinance. Hendricks v. Bald, No. 01-307-M, 2002 WL 385013, at *2-3 (D.N.H. Mar. 12, 2002) (claim that failure to enforce laws and ordinances violated a liberty or property interest protected by Due Process Clause has no likelihood of success). And if recast as a substantive Due Process claim, it remains unviable in light of the conclusion that the Noise Ordinance is not facially unconstitutional. See DA Mortg., Inc., 486 F.3d at 1272 (because noise ordinance found constitutional on its face, summary judgment properly terminated plaintiff's damage claim based on allegation that enforcement violated its substantive due process rights). I recommend that all claims based on the Fifth and Fourteenth Amendments be dismissed.

e.      **Claims against Roman Catholic Bishop of Providence**

The Second Amended Complaint speculates that the claim against the Roman Catholic Bishop of Providence ("the Bishop") "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" and alleges that, despite complaints to the Bishop, the bells continue unabated. ECF No. 33 ¶¶ 6, 17.

To the extent that Mr. Devaney's claim rests on the Bishop's status as a corporation sole and the ecclesiastical head of the diocese of which St. Thomas is a parish, it fails as a matter of well-settled Rhode Island law. In Doe v. Gelineau, 732 A.2d 43 (R.I. 1999), the Rhode Island Supreme Court faced a similar effort to join the Bishop based on allegations of authority over St. Aloysius School, the target of sexual abuse claims. It held that, although the Bishop was the ecclesiastical head of the diocese, and served as the President, Treasurer, and Director of St.

Aloysius, "[t]he mere fact that a person holds an office in two corporations that may be dealing with each other and that have offices in the same building, without more, is not enough to make them identical in contemplation of law." Id. at 49 (quoting Stratford Credit Corp. v. Berman, 54 A.2d 404, 407 (R.I. 1947)). Colorfully likening the piercing of the corporate veil to "act[ing] like Vlad the Impaler," the court held that, without foundational facts sufficient to establish the availability of veil-piercing liability, the claims against the Bishop must be dismissed. Gelineau, 732 A.2d at 44, 52. Mr. Devaney's pleading is similarly deficient.

The Second Amended Complaint is also lacking if interpreted as an attempt to join the Bishop in his capacity as an individual who happens to work for the diocese, but not for St. Thomas Church. To survive a motion to dismiss, such a claim must rest either on factual allegations establishing that the individual personally participated in the specific acts that give rise to the alleged harm or on specific statutory authority that creates vicarious liability based on status. Banks v. Bowen's Landing Corp., 652 A.2d 461, 463-64 (R.I. 1995); Alterio v. Biltmore Constr. Corp., 377 A.2d 237, 241 (R.I. 1977). Mr. Devaney also makes no attempt to inject either facts or law to plausibly state a claim against the Bishop individually; the allegation that he complained to the Bishop, without result, is not enough. Rather he candidly concedes that further investigation or discovery is needed to develop sufficient facts to hold the Bishop in this case. Such an aspirational approach to pleading cannot survive an Iqbal/Twombly challenge – with no facts plausibly establishing a right of recovery against the Bishop, all claims against him should be dismissed.

### f. Supplemental Jurisdiction over Nuisance Claims

With no federal questions remaining, this Court must determine whether to exercise supplemental jurisdiction over Mr. Devaney's state law private nuisance cause of action against

the Churches. See 28 U.S.C. § 1367. "[T]he termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion." Senra v. Town of Smithfield, 715 F.3d 34, 41 (1st Cir. 2013). In deciding whether to exercise supplemental jurisdiction in such a circumstance, the Court "must take into account concerns of comity, judicial economy, convenience, fairness, and the like." Id. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). In the end, the decision is "pragmatic and case-specific." Delgado v. Pawtucket Police Dep't, 668 F.3d 42, 48 (1st Cir. 2012).

In this instance, with the federal questions disposed of at the pleading stage, principles of comity auger strongly in favor of dismissal without prejudice, leaving Mr. Devaney free to bring his nuisance claims in state court. Hanover Sch. Dist., 626 F.3d at 6 n.12 (proper exercise of discretion to decline to exercise supplemental jurisdiction over remaining state law claims based on principles of comity after Establishment Clause claim arising from voluntary recitation of Pledge of Allegiance in schools dismissed for failure to state a claim). I note that, as long as such claims are filed within thirty days after the federal court declines supplemental jurisdiction, 28 U.S.C. § 1367(d) tolls the statute of limitations. Brown v. City of Boston, 98 F.3d 1333, at *1 (1st Cir. 1996) (per curiam) (statute of limitations tolled for thirty days when federal court declines supplemental jurisdiction).

## IV.    Conclusion

I recommend that this Court grant all of the remaining motions to dismiss (ECF Nos. 37, 38, 39 and 40), dismissing with prejudice (i) all claims against all Defendants arising under 42 U.S.C. § 1983 based on the First, Fifth and Fourteenth Amendments of the United States Constitution; (ii) all state law claims against the Town of Narragansett; and (iii) all claims against the Roman Catholic Bishop of Providence.  In addition, I recommend that all claims arising under state law against the Churches be dismissed without prejudice to being refiled in the state court.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 10, 2014